FILED  09/02/2020
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

CLERK'S OFFICE
AT GREENBELT
BY ___rss___, DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

BENJAMIN KADOW, et al.,                                *

     Plaintiffs,                                              *

v.                                                                    *          **Case No.: 8:19-cv-00566-PWG**

FIRST FEDERAL BANK, Successor in
Interest to CBC NATIONAL BANK,                    *

     Defendant.                                           *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This is a purported class action case brought by Plaintiffs Benjamin Kadow and Mary and Walsh Jones on behalf of themselves and others similarly situated against Defendant First Federal Bank. Plaintiffs allege that the Defendant and third-party All Star Title, Inc. ("All Star") engaged in an illegal kickback, price fixing, and refusal to deal scheme that resulted in Plaintiffs being overcharged on real estate title and settlement service fees. Plaintiffs bring claims under the Real Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607; the Sherman Act, 15 U.S.C. § 1; and the Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. Pending is Defendant's Motion to Dismiss.[1] For the reasons discussed below, Defendant's motion to Dismiss the RESPA and Sherman Act price fixing claims is denied, but its motion to dismiss the Sherman Act refusal to deal and RICO claims is granted.

---

[1] The motion is fully briefed. *See* ECF Nos. 16, 17, 18, 24. A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2018).

**Background**

On May 31, 2019, Plaintiffs Benjamin Kadow and Mary and Walsh Jones filed an Amended Complaint on behalf of themselves and all those similarly situated.  Am. Compl., ECF No. 15.  The Amended Complaint alleges that CBC National Bank, predecessor to First Federal Bank, engaged in various unlawful schemes with All Star, a title and settlement services company. The alleged scheme has four key components: kickbacks, price fixing agreements, refusals to deal, and use of interstate wires.

First, Plaintiffs allege that beginning in at least 2008, All Star made agreements with various residential mortgage lenders and their agents (alleged "Participating Lenders"), including CBC National, for assignments and referrals to All Star of residential mortgage loans, refinances, and reverse mortgages, in exchange for "kickbacks" to the lenders.  Am. Compl. ¶ 18.  The alleged kickbacks would take different forms, including purchasing and delivering to the Participating Lender or a third party marketing company materials or postage to be used by a Participating Lender for marketing purposes.  *Id.* ¶ 18–24.  To allegedly conceal the kickbacks, the third party marketing companies would allegedly create fake payment records and fake invoices in which All Star and the Participating Lender would receive separate invoices.  *Id.* ¶ 25–30.

Second, Plaintiffs allege that All Star and Participating Lenders conspired and agreed to fix the prices and set minimum prices for the title and settlement services that All Star charges the Participating Lenders' borrowers on the loans assigned and referred to All Star for which the lenders receive kickbacks.  *Id.* ¶ 32-35.  Notably, Plaintiffs do not allege that the Participating Lenders made agreements between one another.  Rather the allegations indicate that each made a separate agreement with All Star.

2

Third, Plaintiffs allege that for any loans generated through the marketing paid for by the All Star kickbacks, the Participating Lenders refuse to deal with any other title and settlement services companies besides All Star. *Id.* ¶ 36.

Fourth, Plaintiffs allege that the Participating Lenders and All Star used the U.S. mail and wires to identify, solicit, and lure borrowers into their alleged scheme. *Id.* ¶ 41. Specifically, potential borrowers were identified in "lead lists" by the third party marketing companies that All Star and Participating Lenders allegedly used for the All Star marketing kickbacks. *Id.* ¶ 41. All Star and Participating Lenders then used these lead lists to solicit borrowers through direct mail and telephone calls. *Id.* ¶¶ 43–47. Further, Plaintiffs allege that All Star and Participating Lenders orchestrated the alleged kickbacks, price fixing, and refusals to deal by and through communications over interstate wires. *Id.* ¶¶ 49–50.

To summarize, the basic allegations are that the Participating Lenders and All Star entered into agreements, under which the lender refers title and settlement services to All Star and agrees with All Star on the price of those services. In exchange, All Star pays for marketing materials and postage for the Participating Lender to use. And on loans generated by the All Star marketing payments, the participating lenders refer the customers exclusively to All Star for title and settlement services. Plaintiffs allegedly accomplished all of the above, and lured customers into the scheme, through the use of interstate mail and wires.

As to the conduct of CBC National specifically, Plaintiffs allege that CBC National was a Participating Lender in the schemes described above since at least 2011. *Id.* ¶ 51. The schemes were allegedly carried out at CBC National branches in Towson, Maryland; Parkville, Maryland; Alpharetta, Georgia; Cumming, Georgia; Blacklick, Ohio; and Elmhurst, Illinois. *Id.* ¶¶ 55–170. Notably, Plaintiffs also allege that during this period CBC National maintained an "in house" title

and settlement services company that was a direct competitor with All Star for title and settlement services on residential mortgage loans brokered or originated by CBC. *Id.* ¶ 54. To support this allegation, Plaintiffs attach a CBC National email that states, "They will send over a quote from CBC's in house title company. Our fees will be $200 more than the quote they send over." Compl., Ex. 16, ECF No. 17-1.

Plaintiff Benjamin Kadow alleges he obtained a residential mortgage loan from a CBC National branch in Towson, Maryland. *Id.* ¶ 171. Similarly, Plaintiff Plaintiffs Mary and Walsh Jones allege they obtained a residential mortgage loan from a CBC National branch in Alpharetta, Georgia. *Id.* ¶ 179. Mr. Kadow and the Joneses each allege that CBC National assigned and referred their loans to All Star pursuant to the alleged kickback and refusal to deal agreements described above. *Id.* ¶¶ 172, 180. Mr. Kadow alleges he paid $2,300 and the Joneses allege they paid $2,299.07 in title and settlement service fees, which they claim are based on the alleged price fixing and minimum fee agreements and therefore paid supracompetitive rates. *Id.* ¶ 173, 181.

Based on the foregoing, Plaintiffs allege three counts: (1) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607; (2) violation of the Sherman Act, 15 U.S.C. § 1; and (3) violations of Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. *Id.* ¶¶ 256–308. Pending is Defendant's motion to dismiss all of the claims against it.

I note that the allegations in this case are familiar ones, as Plaintiffs' lawyers in this case are counsel to other Plaintiffs who have filed suit in this Court against other alleged Participating Lenders based on the same underlying scheme. These cases are in various pretrial stages and in some of these cases the judges of this Court have issued memorandum opinions addressing similar arguments as those raised here. *See Somerville v. West Town Bank & Trust*, PJM-19-140 (denied

motion to dismiss RESPA claim, granted motion to dismiss Sherman Act claim, denied motion to dismiss RICO claim, case settled); *Walls v. Sierra Pac. Mortg. Co., Inc.*, GLR-19-595 (granted motion to dismiss RESPA claim, Sherman Act claim withdrawn, granted motion to dismiss RICO claim, motion for reconsideration pending); *Donaldson v. Primary Residential Mortg., Inc.*, ELH-19-1175 (denied motion to dismiss RESPA claim, Sherman Act claim withdrawn, granted motion to dismiss RICO claim, case in discovery); *Remsnyder v. MBA Mortg. Servs., Inc.*, CCB-19-492 (no motion to dismiss filed, case in discovery); *Williams, Sr. v. Maryland Mut. Mortg., LLC*, SAG-19-1464 (case voluntarily dismissed).

## **Standard of Review**

Plaintiffs move to dismiss under Federal Rules of Civil Procedure 12(b)(1), (2), and (6). Under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *See Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). In a facial challenge to subject matter jurisdiction, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). When the jurisdictional facts are challenged, the court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647; *see also Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).

Pursuant to Fed. R. Civ. P. 12(b)(2), a party may seek dismissal of a claim for want of personal jurisdiction. Where, as here, a defendant challenges this Court's personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the jurisdictional question "is to be resolved by the judge, with the

burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence.“ *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 396 (4th Cir. 2003)).  If the Court considers the operative complaint and the parties' briefings but does not conduct an evidentiary hearing, then “‘the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge.’” *In re Celotex Corp.,* 124 F.3d 619, 628 (4th Cir.1997) (quoting *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989)); *see Consulting Eng'rs Corp. v. Geometric Ltd.,* 561 F.3d 273, 276 (4th Cir.2009)). In taking this approach, a court “must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.” *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 62 (4th Cir. 1993); *see also Mitrano v. Hawes,* 377 F.3d 402, 406 (4th Cir. 2004).

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint for “failure to state a claim upon which relief can be granted.”  This rule’s purpose “is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.” *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A complaint must contain “a short and plain statement of the claim showing that the pleader is entitled to relief.” Fed. R. Civ. P. 8(a)(2).  Specifically, a plaintiff must establish “facial plausibility” by pleading “factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  But “[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.” *Id.*  Well-pleaded facts as alleged in the complaint are accepted as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).  Factual allegations must be construed “in the light most favorable to [the] plaintiff.” *Adcock v. Freightliner LLC*, 550 F.3d

369, 374 (4th Cir. 2008) (quoting *Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060, 1062 (4th

Cir. 1984)).  Additionally, the Court may "consider documents that are explicitly incorporated into

the complaint by reference."  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir.

2016); *see also Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D.

Md. Mar. 28, 2013) ("The court may consider documents attached to the complaint, as well as

documents attached to the motion to dismiss, if they are integral to the complaint and their

authenticity is not disputed."); *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154

(4th Cir. 2009).

Where the allegations in a complaint sound in fraud, the plaintiff also must satisfy the

heightened pleading requirements of Federal Rule of Civil Procedure 9(b) by "stat[ing] with

particularity the circumstances constituting fraud."  This requires that the plaintiff allege "the time,

place, and contents of the false representations, as well as the identity of the person making the

misrepresentation and what he obtained thereby."  *Harrison v. Westinghouse Savannah River Co.*,

176 F.3d 776, 784 (4th Cir. 1999) (internal quotation marks omitted).

<u>Discussion</u>

I.   **Real Estate Settlement Procedures Act Claims**

In Count I of the Amended Complaint, Plaintiffs allege Defendant violated Section 8(a) of

the Real Estate Settlement Procedures Act ("RESPA"), codified at 12 U.S.C. § 2607(a).  That

section states:

> No person shall give and no person shall accept any fee, kickback, or thing of value
> pursuant to any agreement or understanding, oral or otherwise, that business
> incident to or a part of a real estate settlement service involving a federally related
> mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a).  In common parlance, RESPA prohibits kickbacks for referrals for real estate settlement service involving federal mortgage loans.   However, RESPA's implementing regulations create a safe harbor, and provide that a lender can pay "for services actually performed," even if the services are "tied to referrals."   12 C.F.R. § 1024.14(g)(1)(iv).  Such a payment is improper only if the amount paid "bears no reasonable relationship to the market value of the goods or services provided."  *See* 12 C.F.R. § 1024.14(g)(2); *PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1, 41 (D.C. Cir. 2016) ("[T]ransactions between businesses . . . tied to referrals" are "lawful so long as reasonable market value was paid and the services were actually performed."), *reinstated in relevant part and rev'd on other grounds*, 881 F.3d 75 (D.C. Cir. 2018). RESPA claims have a one-year statute of limitations.  12 U.S.C. § 2614.

Defendant moves to dismiss on the basis that Plaintiffs do not sufficiently allege that (a) Defendant was not in RESPA's safe harbor provisions; (b) the RESPA claims are time-barred; and (c) Plaintiffs lack standing for their RESPA claim because they fail to sufficiently allege actual injury.

### a.  RESPA Safe Harbor

Defendant argues that Plaintiffs have not pleaded sufficient facts to plausibly allege that the challenged payments were not within RESPA's safe harbor provision.  Judges in this Court have considered these arguments in the related cases.  In *Walls v. Sierra Pac. Mortg. Co., Inc.*, Judge Russell dismissed the plaintiffs' RESPA claim because they failed to allege that the lender's payments to All Star were not protected by the safe harbor.  No. GLR-19-595, 2020 WL 1528626, at *7 (D. Md. Mar. 31, 2020) ("In failing to allege that Sierra Pacific's payments to All Star are

not protected under section 8(a)'s safe harbor provision, Plaintiffs have failed to allege an element of their RESPA claim.").

In contrast, in *Donaldson v. Primary Residential Mortg., Inc.*, Judge Hollander found that Plaintiffs had adequately alleged their RESPA claim.  Judge Hollander considered the opinion of Judge Russell, but on the pleadings before her ultimately determined that the allegations were sufficient to fall outside of RESPA's safe harbor.  No. ELH-19-1175, 2020 WL 3184089, at *19 (D. Md. June 12, 2020).  Judge Hollander noted that "[a]t the [motion to dismiss] stage of the litigation," in which the allegations in the complaint are taken as true, "plaintiffs have adequately pleaded facts that plausibly allege that the payments were not within the ambit of RESPA's safe harbor."  *Id.*  Specifically, "Plaintiffs have alleged that the payments were not for marketing services but, instead, were kickbacks for referrals."  *Id.* This allegation was supported by allegations of sham invoices and sham payments, and that the payments were not made for the provision of title services.  *Id.* [2]

Here Plaintiffs have sufficiently alleged facts that would establish Plaintiffs are outside of RESPA's safe harbor.  Taking the allegations in the complaint as true, Plaintiffs allege that All Star paid Participating Lenders, including CBC National, "kickbacks" for the assignment and referral of residential mortgage loans, refinances, and reverse mortgages.  Amend. Compl. ¶ 18. Although some of the payments for these alleged kickbacks were paid in "marketing materials" and postage, All Star and Defendant allegedly attempted to conceal the true nature of the payments through the use of sham invoices and sham payment records.  *Id.* ¶¶ 20–30.  Thus, Plaintiffs allege

---

[2] In *Somerville v. West Town Bank & Trust*, Judge Messitte found that Plaintiffs adequately alleged a RESPA claim, though in that case the parties did not dispute the safe harbor provision.  *See Somerville v. W. Town Bank & Tr.*, No. PJM 19-0490, 2019 WL 6131288, at *3 (D. Md. Nov. 19, 2019).

that "[w]ith the laundering of kickbacks through third party marketing companies and the use of sham invoices and payment records, All Star and Participating Lenders hoped to be able to use claims of 'co-marketing' as a sham and to further conceal the kickbacks and Kickback Agreement from borrowers, regulators and law enforcement." *Id.* ¶ 31.  This is sufficient at this stage of the pleadings to plausibly contend that the alleged payments were outside of RESPA's safe harbor. It may be that Defendant ultimately will be able to show that all of the payments were for services actually rendered within the safe harbor provisions.  However, that must be established after discovery on these claims.

### b.   RESPA Statute of Limitations

Next, Defendant argues that Plaintiffs' RESPA claims fail because they are brought outside of RESPA's one-year statute of limitations that began to run "on the date of the occurrence of the violation." 12 U.S.C. § 2614.  Plaintiffs allege RESPA violations spanning from 2011 to 2015, and brought this action in 2019.  Therefore, Plaintiffs' RESPA claims are time-barred, unless they are entitled to tolling of the statute of limitations.  Plaintiffs argue that they are indeed entitled to equitable tolling of the statute of limitations based on fraudulent concealment.

The Fourth Circuit "long has held that to toll a limitations period based on fraudulent concealment, 'a plaintiff must demonstrate: (1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence.'" *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 548 (4th Cir. 2019) (quoting *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995) (citing *Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir. 1974)).  "To satisfy the first

element of the fraudulent concealment test, a plaintiff must 'provide evidence of affirmative acts of concealment'" by the defendant. *Id.* (quoting *Marlinton*, 71 F.3d at 126). "'Those acts, however, need not be separate and apart from the acts of concealment,' but instead 'may include acts of concealment involved in the [alleged] violation itself.'" *Id.* "A plaintiff satisfies its burden to allege an affirmative act of concealment if, for example, it alleges that the defendant employed 'some trick or contrivance intended to exclude suspicion and prevent inquiry.'" *Id.* (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446–47 (6th Cir. 2012)).

*Edmonson* involved a RESPA claim with allegations quite similar to those alleged here. In that case, the Fourth Circuit found that the plaintiffs adequately alleged acts of concealment based on contentions  that "both Genuine Title and the Lenders created and used 'sham' entities to channel the allegedly unlawful cash kickbacks," "the Lenders' brokers and loan officers entered into 'sham' Title Services Agreements and 'back-dated' those agreements to further disguise the kickback scheme," and "the Lenders concealed their kickback scheme by not reporting the payments on Plaintiffs' required HUD-1 Settlement Statements, notwithstanding that governing regulations *required* reporting such payments." *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553–54 (4th Cir. 2019).

Here Plaintiffs allege that CBC National fraudulently concealed its scheme through the use of third party marketing companies, "sham invoices and payment records," and not reporting the payments on Plaintiffs' HUD-1 statements. *See* Am. Compl. ¶¶ 188–90; 209–15. Based on nearly identical allegations, Judges Messitte, Russell, and Hollander found that plaintiffs had sufficiently alleged fraudulent concealment. *See Somerville v. W. Town Bank & Tr.*, 2019 WL 6131288, at *2; *Walls v. Sierra Pac. Mortg. Co., Inc.*, 2020 WL 1528626, at *4; Donaldson v. Primary Residential Mortg., Inc.*, 2020 WL 3184089, at *21. Following *Edmonson*, and consistent with

the decisions in *Somerville*, *Walls*, and *Donaldson*, I find the same.  Plaintiffs here have met their

burden in alleging the first element to toll the statute of limitations.

As to the second and third factors, I must determine whether Plaintiffs exercised due

diligence to uncover the facts supporting their claims but failed to uncover such facts within the

limitations period.  Defendant argues that Plaintiffs allege no diligence at all.  ECF No. 17 at 32.

"Generally, whether a plaintiff exercised due diligence is a jury issue not amenable to resolution

on the pleadings or at summary judgment."  *Edmonson v. Eagle Nat'l Bank*, 922 F.3d at 554

(citing *TCF Nat. Bank v. Market Intelligence, Inc.*, 812 F.3d 701, 711 (8th Cir. 2016); *Morton's*

*Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 832 (11th Cir. 1999); *Reiser v. Residential*

*Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004)).  "[I]f a plaintiff is 'aware of facts that should

have excited further inquiry,' then, so long as the plaintiff engages in 'reasonable further inquiry,'

the limitations period is tolled—and therefore does not begin to run—until such an inquiry would

have revealed sufficient facts for the plaintiff to state a claim that would survive a motion to

dismiss."  *Id.* (quoting *Marlinton*, 71 F.3d at 128).  "[I]t is possible for a plaintiff to satisfy [the

due diligence requirement] without demonstrating that it engaged in any specific inquiry . . . [i]f

the plaintiff establishes that it was not (and should not have been) aware of facts that should have

excited further inquiry on its part.'"  *Id.* (quoting *Marlington*, 71 F.3d at 128.)

In *Edmonson*, the Fourth Circuit held that "whether one would expect a *reasonable*

*residential mortgage borrower* to keep abreast of all enforcement actions related to the mortgage

lending and title services industries" such that the plaintiffs were on inquiry notice for purposes of

the RESPA statute of limitations was an issue that "should be decided by the finder of fact and is

not amenable to resolution on the pleadings or at summary judgment.  *Id.* at 558.  Similarly, my

colleagues in *Somerville*, *Donaldson*, and *Walls* declined to find at the motion to dismiss stage that

the plaintiffs in those cases failed to exercise due diligence as a matter of law.  *See Somerville*, 2019 WL 6131288, at *3l; *Walls v. Sierra Pac. Mortg. Co., Inc.*, 2020 WL 1528626, at *5; *Donaldson v. Primary Residential Mortg., Inc.*, 2020 WL 3184089, at *21.  Based on the same logic, I cannot conclude at this stage of the proceedings that Plaintiffs here failed to exercise due diligence to uncover the allegedly concealed claims.  Therefore, Plaintiffs have adequately alleged equitable tolling based on fraudulent concealment, and Defendant's motion to dismiss their RESPA claims based on the statute of limitations is denied.

### c.   Standing for RESPA claim

Finally, Defendant argues that Plaintiffs' RESPA claim fails because the Plaintiffs lack standing.  Defendant argue that Plaintiffs have not suffered a cognizable harm to satisfy the "injury-in-fact" requirement of Article III standing.  *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017).  Specifically, Defendant argues that although Mr. Kadow and the Joneses allege damages of at least $300 and at least $1,300, respectively, as a result of surcharges from the alleged kickback scheme, they were not actually injured because Mr. Kadow received a lender's credit of $979.80 and the Joneses received a lenders credit of $8,558.04 to reduce their closing costs.  ECF No. 16 at 34.  Therefore, Defendant argues that even if there were surcharges based on the kickback agreement, Plaintiffs suffered no injury.  *Id.*  In response, Plaintiffs argue that the "credit" in question is a actually a tradeoff for the borrower having selected, and paid, a higher interest rate. ECF No. 17 at 31.  Plaintiffs support their argument with guidance from the Consumer Financial Protection Bureau.  *See* Consumer Financial Protection Bureau, What are (discount) points and lender credits and how do they work? (Aug, 3, 2017), https://www.consumerfinance.gov/ask-cfpb/what-are-discount-points-and-lender-credits-and-how-do-they-work-en-136/      ("Lender

credits work the same way as points, but in reverse. You pay a higher interest rate and the lender gives you money to offset your closing costs. When you receive lender credits, you pay less upfront, but you pay more over time with the higher interest rate.")

In *Donaldson*, Judge Hollander considered similar arguments. She concluded that at this stage of the litigation, in which the Court must assume the truth of the allegations in the complaint, the plaintiffs adequately alleged that the prices they paid for title and settlement services were supracompetitive based on the alleged kickback scheme. *Donaldson*, 2020 WL 3184089, at *16. Further, Judge Hollander found that she could not conclude at the motion to dismiss stage whether lender credits reduced plaintiffs' overall cost and that plaintiffs did not suffer an injury. *Id.* This exact logic applies here. For the same reasons, Plaintiffs in this case adequately alleged injury-in-fact based on the alleged supracompetitive rates they paid for title and settlement services.

## II.   Sherman Act Claims

In Count II of the Amended Complaint, Plaintiffs allege that Defendant violated the Sherman Act, 15 U.S.C. § 1, by (1) conspiring and executing an agreement to fix the price of titles and settlement services, Am. Compl. ¶ 273; and (2) conspiring and executing an agreement to refuse to deal with competitors. Am. Compl. ¶ 274. Defendant moves to dismiss for failure to state a Sherman Act claim.

### a.  Price Fixing

Plaintiffs' allegations for horizontal price fixing survive Defendant's motion to dismiss – though just barely.

Price fixing is any "combination formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 (1940). The vast majority of Plaintiffs' allegations have nothing to do with a price fixing scheme. Rather, they are more appropriately categorized, as Defendant points out, as a tying arrangement, in which a loan from CBC National is the tying product, and All Star title and settlement services is the tied products. But tying arrangements are not necessarily unlawful and may even be pro-competitive. *See Donaldson v. Primary Residential Mortg., Inc.*, 2020 WL 3184089, at *18 ("'Tying arrangements are ubiquitous in the U.S. economy. To be sure, tying arrangements are outlawed in certain circumstances, but they were not outlawed by [RESPA] Section 8 in the circumstances at issue here.[ ]' . . . [T]ying arrangements 'are rarely prohibited' and 'can be *beneficial* to consumers . . . by enhancing efficiencies and lowering costs.'") (quoting *PHH v. Consumer Financial Protection Bureau*, 839 F.3d 1, 42 n.3 (D.C. Cir. 2016), *rev'd on other grounds*, 881 F.3d 75 (D.C. Cir. 2018) (*en banc*)).

In *Somerville v. West Town Bank & Trust*, Judge Messitte granted the defendant's motion to dismiss the plaintiffs' Sherman Act claims. Judge Messitte found that the defendant lender and All Star simply were not horizontal competitors and therefore the Sherman Act claims failed under either the per se or quick look analysis as alleged. *Somerville v. W. Town Bank & Tr.*, 2019 WL 6131288, at *8–9. After Judge Messitte's opinion was issued in *Somerville*, the plaintiffs in *Walls* and *Donaldson* withdrew their Sherman Act claims. *See Walls v. Sierra Pac. Mortg. Co., Inc.*, 2020 WL 1528626, at *2 n.4; *Donaldson v. Primary Residential Mortg., Inc.*, 2020 WL 3184089, at *1 n.1.

But in this case, the Sherman Act price fixing claim survives (at least for now) because the pleadings contain one critical difference from those in *Somerville* that allows the Sherman Act

price fixing claim to survive – though barely.  Specifically, Plaintiff alleges that CBC National had its own title and settlement service company, which would make it a direct competitor of All Star. Am. Compl. ¶ 54.  To support this allegation, Plaintiffs attach a CBC National email that states, "They will send over a quote from CBC's in house title company.  Our fees will be $200 more than the quote they send over."  Compl., Ex. 16, ECF No. 17-1.  Plaintiff further alleges and attaches documents suggesting All Star and CBC were at least sharing information about and potentially agreeing on prices for title and settlement services.  Am. Compl. ¶ 54; Ex. 1, ECF 1-2. These allegations of price fixing between direct competitors, taken as true for the purposes of this motion, adequately state a price fixing claim.  *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 (1940); *United States v. McKesson & Robbins, Inc.*, 351 U.S. 305, 315 (1956) (price fixing between firms at same market level per se unlawful).

Defendant argues that Plaintiff misreads the email referring to CBC National's in house title and settlement services provider, and that under federal law mortgage lenders are prohibited from engaging in title and settlement services.  ECF No. 18 at 4 n.3.  But the success of this argument depends on construing the email as the Defendant does, as opposed to how the Plaintiffs construe it, and I am prohibited at the pleadings stage from drawing any inference favoring the Defendant. To be sure, following discovery, Defendant may have a basis for summary judgment on these claims.  However, taking the allegations in the complaint as true and granting inferences to the nonmoving party, Plaintiffs' allegations of price sharing and fixing between direct competitors for title and settlement services is sufficient to survive the motion to dismiss.

16

b. **Refusal to deal**

Plaintiffs allege that CBC National and All Star "executed an agreement to refuse to deal with competitors on all CBC [] loans generated" by All Star.   Am. Compl. ¶ 274.  Plaintiffs assert that "agreements between participants at the same market level to refuse to deal with other competitors are unreasonable restraints of trade as a matter of law and per se violations of §1 of the Sherman Act." *Id.* ¶ 276.  A refusal to deal typically involves agreements between competitors at a given level of a market not to work with other companies at another level of the market.  *See, e.g.*, *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928, 936 (7th Cir. 2000).  In this way the agreement is to "boycott" another company and cut them out of the market.

In *Somerville*, Judge Messitte found that plaintiffs failed to allege a refusal to deal scheme.  He explained:

> Plaintiffs also allege a refusal to deal scheme, otherwise known as a group boycott, by which West Town would "refuse to deal with any title and settlement services company" other than All Star. ECF No. 1, ¶ 40. Like their price fixing claim, the group boycott claim also fails because a group boycott must be among competitors to be per se unlawful. *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998); *Southern Volkswagen, Inc. v. Centrix Financial, LLC*, 357 F. Supp. 2d 837, 848-49 (D. Md. 2005) ("For an agreement to be deemed a per se group boycott, it must be made among horizontal competitors."); *see also Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111 (10th Cir. 2008) ("the claims are inadequately pled because State Farm and Lynx are not competitors, and therefore cannot engage in a per se illegal, horizontal restraint of trade"); *Spectators' Communication Network Inc. v. Colonial Country Club*, 253 F.3d 215 (5th Cir. 2001). Moreover, Plaintiffs have offered little detail concerning the refusal to deal portion of the alleged agreement.  Indeed, the record suggests that West Town did not prevent prospective borrowers from procuring settlement services from companies other than All Star if they found a preferable or cheaper title company. *See, e.g.*, ECF No. 1-17.

*Somerville v. W. Town Bank & Tr*, 2019 WL 6131288, at *7 n.5.

As explained above, the allegations here differ from those in *Somerville*, because in this case there are allegations, however slim, that CBC National and All Star were direct competitors

17

for title and settlement services.  But this does not save plaintiffs' refusal to deal claim because the Amended Complaint is devoid of allegations that CBC National and All Star, as title and settlement service companies, had an agreement to boycott a third party mortgage lender and cut them out of the market.  Rather, the Amended Complaint makes clear that All Star worked with many "Participating Lenders."  *See* Am. Comp. *passim*.  And to the extent that Plaintiffs allege that CBC National and All Star refused to deal with other title and settlement service companies, this argument fails for the reasons explained by Judge Messitte.  Namely, that would be an agreement between companies at different market levels and would not support Plaintiffs' allegations of a per se unlawful refusal to deal agreement.  Therefore, Plaintiffs' Sherman Act claims based on a refusal to deal are dismissed.

### III.     Racketeer Influenced & Corrupt Organizations Act Claims

In Count III, Plaintiffs allege violations of the Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.  That section provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in . . . the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a).  As the predicate for this claim, Plaintiffs allege that Defendant engaged in "mail and wire fraud," based on Defendant's use of interstate mail and wires to further the alleged kickback, price fixing, and refusal to deal schemes discussed above.   Am. Compl. ¶ 294.

The Fourth Circuit has described a civil RICO action as "a unique cause of action that is concerned with eradicating organized, longterm, habitual criminal activity."  *U.S. Airline Pilots*

*Ass'n v. Awappa, LLC,* 615 F.3d 312, 317 (4th Cir. 2010) (internal quotation marks and citation omitted).   Accordingly, it cautioned district courts "to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value; and that the multiple state and federal laws bearing on transactions . . . are not eclipsed or preempted." *Id.*  The Fourth Circuit "will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims." *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988)."

To plead a civil RICO claim, the plaintiff must allege "'1) conduct [causing injury to business or property] 2) of an enterprise 3) through a pattern 4) of racketeering activity.'" *Morley v. Cohen*, 888 F.2d 1006, 1009 (4th Cir. 1989) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)).  A RICO enterprise can consist of "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  Here the pleadings describe an alleged association-in-fact enterprise.  "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle* v. *United States*, 556 U.S. 938, 946 (2009).

In *Somerville*, Judge Messitte found that the plaintiffs adequately plead their RICO claim. *Somerville v. W. Town Bank & Tr.*, 2019 WL 6131288, at *5.  Relevant to Judge Messitte's analysis was the defendant lender's alleged use of the mail to solicit borrowers and use of a third party marketing company outside of Maryland as part of the scheme. *Id.* at *5-6.  Judge Messitte also noted that, "Plaintiffs have alleged in detail a fraudulent scheme involving the conduct of multiple companies and at least six bank branches over the course of five years that, Plaintiffs say,

affected over 2,000 borrowers in multiple states" and therefore found that the defendant's purported acts were "appropriately covered by the RICO statute." *Id.* at *6.

In contrast, in *Walls* and *Donaldson*, Judges Russell and Hollander dismissed the RICO claims. Judge Russell found that the RICO claims were based on the same allegations as the RESPA claims, and because he found that the plaintiffs' RESPA claims failed, so too did their RICO claims. *Walls v. Sierra Pac. Mortg. Co., Inc.*, 2020 WL 1528626, at *7 ("[B]ecause Plaintiffs' RICO claim is based upon mail and wire transaction that purportedly occurred in furtherance of the alleged RESPA scheme, the Court will also dismiss Plaintiffs' RICO claim.")

In *Donaldson*, Judge Hollander explained that the essence of the enterprise alleged was of a hub and spoke variety, with All Star as the hub and the Participating Lenders as the spokes. *Donaldson v. Primary Residential Mortg., Inc.*, 2020 WL 3184089, at *26. But, she found that the allegations failed to show how the spokes were connected to one another. *Donaldson v. Primary Residential Mortg., Inc.*, 2020 WL 3184089, at *26 ("Significantly, the Complaint is devoid of facts connecting the spokes. In other words, the Complaint is bereft of allegations suggesting that the participating mortgage lenders were working together in furtherance of the scheme or, indeed, that they were even aware of each other's existence. ") *Id.* Therefore, this "rimless" hub and spoke conspiracy failed. *Id. citing In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374 (3d Cir. 2010) (noting that an asserted hub and spoke RICO conspiracy without a rim was "fatally defective").

As the Plaintiffs do here, the plaintiffs before Judge Hollander argued that they are masters of their complaint and are limiting their RICO claim to that of a bilateral enterprise. Judge Hollander rejected this argument, stating:

> To be sure, plaintiffs posit that they are "masters of the Complaint" and are therefore "entitled to limit their RICO claim to [that of a] bilateral enterprise." ECF

12-1 at 40.  But, to interpret the Complaint as plaintiffs urge is tantamount to rewriting the Complaint by way of an opposition to a motion to dismiss.  This is not permitted. *See, e.g.*, *Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (noting that "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss'") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)).  The heart of plaintiffs' RICO claim involves a structure that they have simply failed to allege. Accordingly, I conclude that plaintiffs have failed plausibly to allege a RICO enterprise.

*Donaldson v. Primary Residential Mortg., Inc.*, 2020 WL 3184089, at *26.

For the same reasons as Judge Hollander explained in *Donaldson*, I find that the allegations here fail to state a RICO claim.  While Plaintiffs allege that multiple "Participating Lenders" were involved in the alleged scheme with All Star, as Judge Messitte noted, in this case there are no allegations that indicate any of the participating lenders were in agreement together.  Rather, the allegations only suggest that All Star had a similar alleged kickback (or as Defendants say, co-marketing scheme) with various lenders.  Indeed, this is *confirmed* by Plaintiffs' arguments that the Court should treat this as a bilateral enterprise.  Taking this as a bilateral enterprise, Plaintiffs ask this Court to transform an alleged agreement between All Star and CBC National into a RICO conspiracy.  This is precisely what the Fourth Circuit has warned against doing.  *See Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988) (The Fourth Circuit "will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims.")  If other lenders had similar agreements with All Star, other aggrieved plaintiffs can bring, and some quite obviously have brought, their claims against them.  But the allegations that All Star repeated the same alleged schemes with other lenders does not put the Defendant here in a RICO conspiracy. "Were the rule otherwise, competitors who independently engaged in similar types of transactions with the same firm could be considered associates in a common enterprise.  Such a result would

contravene *Boyle's* definition of "enterprise." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 375 (3d Cir. 2010).

Plaintiff's point to the Third Circuit's statement in *In re Insurance Brokerage Antitrust Litigation* that "it is possible that plaintiffs' factual allegations would provide a plausible basis for the assertion of a number of bilateral enterprises, each encompassing a broker and one of its insurer-partners, or even the assertion that individual brokers or insurers each constituted an enterprise." 618 F.3d 300, 375 (3d Cir. 2010). Plaintiffs essentially argue that they have taken up the Third Circuit's suggestion and alleged a bilateral enterprise here. But Plaintiffs seek to have it both ways, writing nearly 300 paragraphs about how CBC National and other Participating Lenders participated in the "All Star scheme" but then ask the Court to find that the alleged agreement between CBC National and All Star on its own constitutes a RICO conspiracy. For the reasons discussed above, if all of the Participating Lenders are involved, the RICO claim fails as a rimless hub and spoke conspiracy. And if just CBC National and All Star are involved, the RICO claim fails as an "ordinary business contract or fraud dispute[]." *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988). Therefore, Defendant's motion to dismiss the RICO claims is granted.

## IV.    Personal Jurisdiction

Finally, Defendant argues that this Court lacks general personal jurisdiction over Defendant, and lacks specific personal jurisdiction over Defendant as to the claims asserted by the Joneses and by out of state class members pursuant to *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773 (2017).

Given that Plaintiffs' Sherman Act price fixing claims survive, this Court has personal jurisdiction over Defendant pursuant to 15 U.S.C. § 22, which provides that "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business." This is sufficient to confer personal jurisdiction over Defendant on Plaintiffs' RESPA claims as well given they arise from a common nucleus of operative fact. *See Noble Sec. Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 556 (E.D. Va. 2009) (holding the court could exercise "pendent personal jurisdiction over claims arising from a common nucleus of operative fact, whether the additional claim is a state claim or a federal claim") (citing *ESAB Grp., Inc. v. Centricut Inc.*, 126 F.3d 617, 628 (4th Cir. 1997)).

Regarding the purported out of state class members, in *Bristol-Myers Squibb*, the Supreme Court held that state courts lacked personal jurisdiction over a defendant on claims brought by out of state residents that did not suffer their alleged injury in the forum state. 137 S. Ct. at 1782. However, the Supreme Court left open the question of "whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784; *Weisheit v. Rosenberg & Assocs, LLC*, JKB-17-0823, 2018 WL 1942196, at *5 (D. Md. Apr. 25, 2018) ("It is unclear what impact *Bristol-Myers* has in . . ." a case involving "the exercise of personal jurisdiction by a federal court over federal law claims in a class action.") Judges in this Court have been skeptical about extending the holding to federal court class actions. Nonetheless, Defendants urge the Court to apply the principles of *Bristol-Myers Squibb* here. Judge Hollander addressed the same argument in *Donaldson*, and explained:

> Courts in this district have consistently expressed skepticism concerning extending the holding of *Bristol-Myers* to federal class actions. *See Weisheit*, 2018 WL 1942196 (declining to find a proposed amended complaint futile under Rule 15 based on *Bristol-Myers)*; *Nat'l Fair Hous. All. v. Bank of Am., N.A.*, No. CCB-18-

23

1919, 401 F. Supp. 3d 619, 628 (D. Md. 2019) (noting that the "animating federalism concerns that drove the Court to divest California of the power to hear certain claims of out-of-state plaintiffs may apply differently in federal court where the forum tribunal and any alternative tribunal represent the same sovereign."). And, the Seventh Circuit recently declined to extend the requirements of *Bristol-Myers* to class actions in federal court. *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020).

*Donaldson v. Primary Residential Mortg., Inc.*, 2020 WL 3184089, at *27.  Ultimately, Judge Hollander concluded that the question was premature.  *Id.*  ("In any event, 'the Court need not decide at this juncture what precisely the contours of a possible class will be, or if the Court will certify a class at all.'") (quoting *Weisheit*, 2018 WL 1924219, at *5).  I find the same.  Issues regarding class certification are properly deferred until such time as the Court determines whether a class will be certified and what the nature of that class will be.

Therefore, Defendants' motion to dismiss based on lack of personal jurisdiction is denied.

<u>Conclusion</u>

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part.  Plaintiffs have adequately alleged RESPA claims and a Sherman Act price fixing claim.  But Plaintiffs' Sherman Act refusal to deal claims and RICO claims are dismissed.  A separate Order will issue.

 September 2, 2020                           _____/S/_____
Date                                        Paul W. Grimm
                                             United States District Judge